**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Southern Division - Miami**



FILED BY _____

00 MAR -1  PM 4: 18

CLARENCE MADDOX
CLERK U. S. DIST. CT.
S.D. OF FLA - MIA

**CASE NO.:**  00-6116-CIV-MIDDLEBROOKS
Magistrate Judge Bandstra

In re:

HCL AVIATION, INC.,
d/b/a Av Atlantic,

      Debtor.

_____

MARIKA TOLZ, Trustee of the
Estate of HCL Aviation, Inc.,

      Plaintiff / Appellee,

v.

STAMBAUGH AVIATION, INC.,

      Defendant / Appellant.

_____/

USBC CASE NO.: 97-21399-BKC-PGH
Chapter 7 Proceeding

USBC ADV. NO.: 99-2081-BKC-PGH-A

## DEFENDANT/APPELLANT, STAMBAUGH AVIATION, INC.'S, INITIAL BRIEF

      Respectfully submitted,
      PHILLIP M. HUDSON, III
      Florida Bar No.: 518743
      GUNSTER, YOAKLEY, VALDES-FAULI & STEWART, P.A.
      Attorneys for Stambaugh Aviation, Inc.
      One Biscayne Tower, Suite 3400
      Two South Biscayne Boulevard
      Miami, Florida 33131-1897
      PH: (305) 376-6000
      FX: (305) 376-6010



USDC Appellate Case No.: 00-6116-CIV-MIDDLEBROOKS
Magistrate Judge Bandstra

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

     Case Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

     Statutes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT OF THE ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . v

    I.     New Value. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

    II.    Lien Perfection. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.    The Court's Equation of Fairness with Enlarging the Debtor's Post-Bankruptcy Estate is not Only Unfair, it Ignores the Code's New Value Safe Harbors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    B.    The Bankruptcy Judge's Definition of New Value is Wrong as a Matter of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    C.    The Court Improperly Ruled there was No Possessory Lien (Tr. 143) . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## TABLE OF AUTHORITIES

**Case Law**                                                                **Page**

A.I. Credit Corp. v. Drabkin (In re Auto-Train Corp.),
49 B.R. 605, 612 (Bankr.D.C.1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Charisma Investment Co. v. Airport Systems, Inc. (In re Jet Florida System, Inc.),
841 F.2d 1082, 1083 (11th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Charisma Investment Co., N.V. v. Air Florida System, Inc.,
68 B.R. 596, 599 (S.D.Fla. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Crews v. National Coating, Inc.(In re National Aerospace, Inc.),
219 B.R. 625, 629-630 (M.D.Fla. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Danning v. World Airways, Inc. (In re Holiday Airlines Corp.),
647 F.2d 977 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Drabkin v. A.I. Credit Corp.,
800 F.2d 1153, 1157-58 (D.C. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Electronic Metal Products, Inc. v. Bittman (In re Electronic Metal Products, Inc.),
916 F.2d 1502, 1506 (10th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Gulf Oil Corp. v. Fuel Oil Supply & Terminaling, Inc.
(In re Fuel Oil Supply & Terminaling, Inc.),
837 F.2d 224 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9, 16

In re Spada,
903 F.2d 971, 976 (3d Cir. 1990)
(citing In re F & S Central Manufacturing Corp.),
53 B.R. 842, 850 (Bankr.E.D.N.Y. 1985)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re STN Enterprises, Inc.,
45 B.R. 959 (D.Vt. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Thomas W. Garland, Inc. v. Nooney Co.
28 B.R. 87 (Bankr.E.D.Mo. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

USDC Appellate Case No.: 00-6116-CIV-MIDDLEBROOKS
Magistrate Judge Bandstra

Jones Truck Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund
(In re Jones Truck Lines, Inc.),
130 F.3d 323, 325   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Kenan v. Fort Worth Pipe Co. (In re George Rodman, Inc.),
792 F.2d 125 (10th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Keydata Corp. v. Boston Edison Co.(In re Keydata Corp.),
37 B.R. 324 (Bankr.D.Mass. 1983)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Lowrey v. U.P.G., Inc. (In re Robinson Brothers Drilling, Inc.),
877 F.2d 32, 33-34 (10th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Nordberg v. Arab Banking Corp.,
904 F.2d 588, 595 (11th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

O'Rourke v. Seaboard Surety Co. (In re Fegert, Inc.),
887 F.2d 955, 958-959 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

In re Phoenix Steel Corp.,
76 B.R. 373, 376 (Bankr.D.De. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Sorenson v. Tire Holdings Ltd. Partnership (In re Vinzant),
108 B.R. 752 (D.Kansas 1989)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Southern Horizons Aviation v. Farmers & Merchants Bank of Lakeland,
497 S.E.2d 637 (Ga.App. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19

Southern Technical College, Inc. v. Graham Properties Partnership,
89 F.3d 1381 (8th Cir. 1996)
(citing In re Kroh Bros. Dev. Co. v. Continental Const. Eng'rs, Inc.,
930 F.2d 648, 651 (8th Cir. 1991)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Waldschmidt v. Ranier (In re Fulghum Construction Corp.),
45 B.R. 112, 120   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

GUNSTER, YOAKLEY, VALDES-FAULI & STEWART, P.A.
PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

263343.7

**Statutes**                                                                 **Page**

11 U.S.C. § 547 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 6, 20

11 U.S.C. § 547(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 16

11 U.S.C. § 547(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 19

11 U.S.C. § 547(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

11 U.S.C. § 547(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 18, 19, 20

11 U.S.C. § 547(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

11 U.S.C. § 547(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7, 11, 16, 18

11 U.S.C. § 547(c)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7, 8, 11, 13, 14, 18

11 U.S.C. § 550 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Ga.St. 44-14-363 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19

GUNSTER, YOAKLEY, VALDES-FAULI & STEWART, P.A.
PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW
263343.7

USDC Appellate Case No.: 00-6116-CIV-MIDDLEBROOKS
Magistrate Judge Bandstra

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this appeal from the ruling of the United States Bankruptcy Judge pursuant to 28 U.S.C. § 158.

## STATEMENT OF THE ISSUES PRESENTED

I.    <u>New Value</u>.  Whether the Bankruptcy Court erred in failing to find that the Defendant provided new value to the Debtor pursuant to 11 U.S.C. §§ 547(c)(1) and (c)(4), improperly ordering the Defendant to disgorge money received during the preferential period.

II.    <u>Lien Perfection</u>.  Whether the Bankruptcy Court erred in ruling that the Defendant was not a secured creditor at the time the alleged preferential payments were made.

## STANDARD OF REVIEW

This Court has de novo review over the legal issues presented herein.

## I. SUMMARY OF ARGUMENT

Bankruptcy law is designed to promote two important, socially beneficial goals: first, to equitably divide the assets of a failed enterprise among its creditors as a whole, and second, to encourage and protect individual creditors who, by advancing credit or services, seek to keep a troubled enterprise from sinking into the abyss that is bankruptcy. In keeping with these dual but equally important objectives, 11 U.S.C. § 547 (section 547 of the United States Bankruptcy Code "the Code") ensures the equal distribution of the value a debtor's post-bankruptcy assets to all similarly situated creditors, while explicitly exempting from this distribution money owed to individual creditors who advanced new value to the dying business before it went under, § 547 instead allows these creditors to recoup the value they themselves advanced for the benefit of the struggling enterprise. This exception is the statutory enactment of the express Congressional policy to protect those creditors who support a distressed company. In this case, Stambaugh was just such a creditor.

Stambaugh Aviation, Inc. ("Stambaugh"), an FAA certified heavy maintenance facility and the creditor/appellant in this case, despite the debt it was owed by charter air carrier HCL Aviation, Inc. ("HCL" or "Debtor"), continued to provide HCL with new value in many forms; extended credit, ongoing repair of several aircraft, the release of liens on at least two aircraft, the release of the aircraft themselves; the increased value of the aircraft and reduced liability to third party aircraft lessors because the aircraft were fresh, all with the intent to keep HCL flying. HCL, legally prohibited from operating its tired planes until Stambaugh was able to freshen them, was then able

to earn some $1 million as a result of Stambaugh's efforts. This was to the benefit not only of HCL, but to the benefit of all HCL's creditors.

The Bankruptcy Court's ruling below, though paved with good intentions, did not protect Stambaugh in recouping the value it advanced to HCL, as required by the law. Instead, the lower Court exalted its own notions of fairness above congressionally guaranteed rights as a creditor of a distressed company. The lower Court, emphasizing the Code's general goal of equanimity to all creditors, mistakenly equated that fairness with enriching the Trustee's purse. The Bankruptcy Court apparently ignored its obligation to effectuate section 547's *other* goal: the protection of those who attempt to rescue failing entities. The Bankruptcy Court ordered Stambaugh to return to HCL's trustee some $127,000, the amount HCL had previously paid Stambaugh in connection with Stambaugh's agreement to repair HCL's fleet, finding these payments to be "preferential." The Court's ruling was contrary to the well-established letter and spirit of the bankruptcy law, and contrary to Congressionally-established public policy. The ruling also serves to discourage creditors from nursing struggling debtors to health -- precisely the behavior Congress seeks to promote. As the aircraft maintenance industry "gets wind" of this ruling, such facilities will no longer service aircraft on credit, making small air carriers much less likely to survive. The safe harbors of § 547(c) were designed to avoid this exact reality.

## II. STATEMENT OF THE FACTS

HCL was a commercial charter air carrier that flew a small fleet of Boeing-727 jets. Through the filing of its Chapter 11 Petition, HCL did business as AV Atlantic Airline. (Dep. of Cheryl Grue

Bercegeay at 24). HCL leased at least seven Boeing-727 aircraft from various aircraft lessors during all relevant periods. Id. Pursuant to federal regulation, such commercial aircraft are required to undergo certain routine yet substantial maintenance procedures, called "checks" in the industry. Id. at 18-19. Many of the aircraft operated by HCL were in need of such checks in the months prior to the filing of the Chapter 11 Proceeding. Id. at 23. The airline's aircraft would be grounded unless these checks were performed and signed off by an FAA certified maintenance facility. (Direct Test. of David Willse at 5).

Stambaugh is an FAA certified aircraft maintenance facility, based in Brunswick, Georgia. (Tr. 68). HCL sought out Stambaugh in connection with the performance of the required checks, and a series of discussions were held in the fall of 1996 regarding Stambaugh's proposed maintenance of various of HCL's Boeing-727 aircraft. (Direct Test. of Mark Stambaugh, Jr. at 1-2). Initially, Stambaugh provided check service for a plane known by its tail number, N203. (Dep. of Cheryl Grue Bercegeay at 24). Typically in the aircraft maintenance industry 50% of the estimated parts and labor costs are due when the aircraft lands for service at the maintenance facility ("induction"), with the remainder of the payment due upon delivery of the serviced aircraft. Id. at 2; see, Direct Test. of David Willse at 5. N203 was inducted on October 1, 1996. After induction, it became apparent that N203 was in need of substantially greater repair than originally anticipated. Stambaugh performed the additional work and agreed to release N203, despite HCL's now due and owing balance of $197,619.52, but only after HCL's awarding Stambaugh a contract to service N295, another of HCL's aircraft. (Direct testimony of Mark Stambaugh, Jr. at 2-3). Stambaugh

insisted that N295 be inducted before the release of N203 to ensure Stambaugh was in possession of collateral (N295) sufficient to secure repayment of the money HCL owed it on N203. Id. at 2-3. On October 14, 1996, N295 was inducted, and Stambaugh released N203 a week later. Id. Ultimately, Stambaugh serviced two other jets, N293 and N1910, services Stambaugh provided through extensions of credit. Id. at 4. In total, Stambaugh received some $719,000 for the services and maintenance it performed with respect to the four (4) HCL aircrafts serviced in the late 1996 and early 1997.

At issue in this litigation are the payments HCL eventually made toward the outstanding balance of $197,619.52 on N203: three payments made in the 90 days prior to the filing of HCL's bankruptcy petition on March 10, 1997 are alleged to be preferential and thus avoidable and recoverable pursuant to 11 U.S.C. § 550. Other payments made were conceded non-preferential by the Trustee/Plaintiff. The questioned payments occurred on December 20, 1996 in the amount of $25,000.00; January 2, 1997, in the amount of $150,000.00; and on February 24, 1997 in the amount of $15,000.00. Findings of Fact and Conclusions of Law ("FOFCOL") at 3. The Trustee alleges that these payments were preferential payments under 11 U.S.C. § 547(b), and subject to return to the Debtor's estate. The Trustee, however, previously conceded that some $62,798.01 of the alleged payments set forth in her complaint were not avoidable under section 547. (Direct Test. of Marika Tolz, Trustee at 3). Thus, the amount in controversy at trial was $127,201.99. Id.

USDC Appellate Case No.: 00-6116-CIV-MIDDLEBROOKS
Magistrate Judge Bandstra

After a trial before the Honorable Thomas S. Utschig, visiting United States Bankruptcy Judge, the Court ruled those payments preferential, not fitting within any of the statutory exceptions, and subject to avoidance and return to the Trustee. (FOFCOL at 12).

### III. STATEMENT OF THE CASE

On March 10, 1999, Marika Tolz, the court-appointed Chapter 7 trustee for HCL, filed the underlying adversary proceeding seeking avoidance and recovery of the pre-petition payments described above. (FOFCOL at 2). At trial, held September 29, 1999, defendant Stambaugh asserted various defenses and affirmative defenses including a defense under 11 U.S.C. § 547(b)(5) that Stambaugh was a fully secured creditor at the time it received the alleged preferential payments and thus the payments were not preferential; that the alleged preferential payments were in the ordinary course of business as that phrase is used in § 547(b)(2) of the Bankruptcy Code, that HCL received contemporaneous new value pursuant to § 547(c)(1) of the Code; and that Stambaugh provided subsequent new value pursuant to § 547(c)(4) of the Code in an amount equal or greater to the amount of the $127,201.99 claimed preferential.

The Court below held, however, that: (1) Stambaugh was not a secured creditor at the time it received the payments in question because it had no written agreement to that effect and did not record liens on the planes in question (Tr. 143-144); (2) the payments made by HCL to Stambaugh were not in the ordinary course of business; (3) Stambaugh did not provide contemporaneous new value to the Debtor; (FOFCOL at 7); and finally (4) Stambaugh advanced no subsequent new value

Case 0:00-cv-06116-AJ    Document 7    Entered on FLSD Docket 03/02/2000    Page 12 of 33

USDC Appellate Case No.: 00-6116-CIV-MIDDLEBROOKS
Magistrate Judge Bandstra

to HCL because it was not shown with specificity (FOFCOL at 7) or because the variety of advances made to HCL did not fall under the statutory or common law definitions of new value. (Tr. 143-44).

As the various and affirmative defenses are separate and independent, the existence of any one of them defeats the Trustee's claim and requires reversal. Specifically, Stambaugh appeals from the Bankruptcy Court's rulings on the grounds that (1) the Court's equation of fairness with enlarging the debtor's post-bankruptcy estate nullified the Congressionally established new value safe harbors contained in §§ 547(c)(1) and (c)(4); and (2) the Court erred in failing to rule that Stambaugh was a secured creditor, having perfected a lien in N295.

## IV. DISCUSSION

A.    The Court's Equation of Fairness with Enlarging the Debtor's Post-Bankruptcy Estate is not Only Unfair, it Ignores the Code's New Value Safe Harbors

A chief policy concern of the Bankruptcy Code is to promote equality of treatment among similarly-situated creditors once a bankruptcy is commenced. The Code therefore looks with suspicion upon transfers of money or property from the debtor to a creditor shortly before the debtor files for bankruptcy. Such payments made during the 90 days before the filing of a bankruptcy (the "preference period") are called "preferential payments", and, pursuant to 11 U.S.C. §§ 547 and 550, must be returned to the trustee for equitable distribution to all creditors. This prevents a debtor from favoring one creditor over another, and likewise prevents a creditor from dismembering a debtor to "get what's his" before others do. See, e.g., Gulf Oil Co. v. Fuel Oil Supply & Terminaling, Inc. (In re Fuel Oil Supply & Terminaling, Inc.), 837 F.2d 224 (5th Cir. 1988) (stating section 547's preference rule "serves two congressional goals. First by bringing back into the debtor's estate

GUNSTER, YOAKLEY, VALDES-FAULI & STEWART, P.A.
PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW                                                                263343.7

6

certain transfers made shortly before the filing of the bankruptcy petition, it creates a disincentive for creditors to attack a financially unstable debtor. Second, it promotes equity among unsecured creditors by forcing these creditors to share the debtors's unencumbered assets on a pro rata basis.")

But the Code recognizes that there are other policies that are at least as important as the policy of simply enlarging the debtor's post-bankruptcy estate for distribution. Therefore, the Code specifically exempts certain payments made by the debtor during the preference period from the preferential payment rule to encourage other socially beneficial behavior by creditors. See, e.g., Electronic Metal Products, Inc. v. Bittman (In re Electronic Metal Products, Inc.), 916 F.2d 1502, 1506 (10th Cir. 1990) (stating "Congress [] recognized that certain otherwise avoidable preferential payments actually ultimately benefitted the debtor's estate and hence the other creditors, and excepted these situations" from the trustee's powers).

One such policy, enacted as § 547(c)(4) and known as the "subsequent new value" exception, encourages creditors to continue extending credit to a financially troubled business in the hopes that the debtor will avoid bankruptcy altogether.[1] Under the subsequent new value exception, if a creditor continues to extend credit, services or other value to a struggling business with debts past due – rather than suing that business immediately for collection and driving it needlessly into bankruptcy – the Code will protect the ability of that creditor to retain for itself moneys it receives

---

[1] As discussed below, Congress enacted a similar policy in what has become known as the "contemporaneous new value" exception under 11 U.S.C. § 547(c)(1). This permits a creditor to receive payments in exchange for goods, services, or other value provided to the debtor at or around the same time, as opposed to later. Because the simple payment for goods or services does not diminish the balance sheet value of the debtor's estate, the law recognizes that the creditor providing that value has not improved his position over other creditors.

from the debtor during the preference period, up to the amount of the new value the creditor extended. The creditor will not be forced to return the money to the bankrupt and be left to hope for some uncertain share of distribution of a post-bankruptcy pie along with all other general unsecured creditors. See, e.g., Jones Truck Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund (In re Jones Truck Lines, Inc.), 130 F.3d 323, 325 (discussing the purpose of section 547(c)(4), which is to "encourage creditors to continue doing business with troubled debtors who may then be able to avoid bankruptcy altogether.") See also, Charisma Investment Co. v. Airport Systems, Inc. (In re Jet Florida System, Inc.), 841 F.2d 1082, 1083 (11th Cir. 1988) (finding the first objective of § 547(c)(4) is "to encourage creditors to continue extending credit to financially troubled entities while discouraging a panic-stricken race to the courthouse"); See also, Southern Technical College, Inc. v. Graham Properties Partnership, 89 F.3d 1381, 1384 (8th Cir. 1996) (citing In re Kroh Bros. Dev. Co. v. Continental Const. Eng'rs, Inc., 930 F.2d 648, 651 (8th Cir. 1991) (stating "[t]he purpose of § 547(c)(4) is 'to encourage creditors to deal with troubled businesses in the hope of rehabilitation'"). Stambaugh was just such a creditor, and according to Cheryl Grue Bercegeay, the President of HCL at all relevant times, Stambaugh did its utmost to keep HCL flying. (Dep. of Cheryl Grue Bercegeay at 35-36, 58-59)

The Court failed to recognize that this legal encouragement to deal with struggling debtors in no way conflicts with the Code's goal of fairness. Indeed, it is an expression of it. Because the creditor confers a material benefit on the debtor by providing new value, the end result is that *all* creditors, not just the party advancing new value, are better off. In re Jet Florida System, 841 F.2d

1084. Permitting a creditor who adds value to offset preferential payments by the amount of the benefit conferred, as the two new value safe harbors allow, does no damage to the balance sheet of the debtor. In fact, as in this case, the debtor's balance sheet is improved. [2]

Stambaugh provided value to HCL in many forms: (1) extension of credit; (2) services in the form of ongoing repair to HCL's aircraft; (3) the voluntary release of Stambaugh's valuable liens on HCL aircraft; and (4) the release of the actual planes themselves from Stambaugh's possession, increased value of the aircraft, and decreased debt to third party lessors. The evidence, unchallenged at trial, clearly indicates that HCL, as a result of Stambaugh's actions, gained well over $1 million from the various forms of value given to the estate. In fact, N203 generated over $1 million in revenue within ninety (90) days of release alone. Yet, the Bankruptcy Court's apparent misinterpretation of both new value exceptions in the bankruptcy statute and the underlying policies led the court to believe that simply adding more money to the trustee's pot for the benefit of other creditors – creditors, who ironically, according to the trial testimony of the trustee herself,[3] will

---

[2] "[T]his focus upon whether a material benefit has been conferred has been explained in terms of insulating a creditor to the extent that creditor thereafter replenishes the estate. In such a situation, the creditor pool would not be harmed to the extent of the offset and the fundamental goal of equality of distribution would be preserved." Crews  v. National Coating, Inc. (In re National Aerospace, 219 B.R. 625, 629-630 (M.D.Fla. 1998); see also, Charisma Investment Co., N.V. v. Air Florida Systems, Inc., 68 B.R. 596, 599 (S.D.Fla. 1986) ("courts have consistently focused on whether the debtor's estate has been materially benefitted by the transaction in question" (citations omitted)). Put another way, the new value defense "is grounded in the principle that the transfer of new value to the debtor will offset the payments, and the debtor's estate will not be depleted to the detriment of other creditors." Gulf Oil, 837 F.2d 230.

[3] The Trustee agreed at trial that there would be "little, if any, money to pay unsecured creditors" but that she herself would expect to collect her fees. (Tr. 16-17). This of course calls into question the wisdom of filing such a suit in the first instance.

probably never receive a distribution once the trustee and her counsel are paid their fees – was somehow more fair than acting in accordance with the statute. It is not.

B.    The Bankruptcy Court's Definition of New Value is Wrong as a Matter of Law

"New Value" is a term of art under the Code, and is defined in relevant part as "money, money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee. . .." 11 U.S.C. § 547(a)(2). In short, "this definition of new value was intended, as construed from the House and Senate reports, 'to codify the usual rules of consideration. H.R.Rep.No. 95-595, 95th Cong. 1st Sess. 372 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 6328; S.R. No. 95-989, 95th Cong., 2d Sess. 87 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5783, In re Spada, 903 F.2d 971, 976 (3d Cir. 1990) (citing In re F & S Central Manufacturing Corp., 53 B.R. 842, 850 (Bankr.E.D.N.Y. 1985)) Therefore, new value may be comprised of anything capable of supporting a contract as consideration, as opposed to something "hypothetical or ephemeral." Id. The Bankruptcy Court's skewed understanding of what constitutes new value, however, resulted in its ruling that none of the services, releases, or transfers of property Stambaugh provided to HCL were valuable under the law. The Court below therefore ordered Stambaugh to disgorge the monies paid to it during the preferential period. This ruling ignores a fundamental purpose of the new value safe harbors for several reasons:

1.    The Court's ruling mistakenly interpreted the Code to exclude, rather than include, Stambaugh's delivery of N203 to HCL as new value. The Code's definition of new value is clear, plain, and unambiguous. It states, "'new value' means money or money's worth in goods,

services, or new credit, *or release by a transferee of property previously transferred . . ..*" 11 U.S.C.

§ 547(a)(2) (emphasis added). It is therefore beyond doubt that when a creditor releases property

previously transferred to it by the debtor, such release may constitute new value if the Debtor

benefits from the release. In this case, HCL delivered numerous of its aircrafts to Stambaugh in valid

transactions for repairs. Stambaugh released N203 contemporaneously with its receipt of the

preferential payments, consistent with the contemporaneous new value exception in § 547(c)(1), and

Stambaugh released N295 subsequent to the preferential payment, for purposes of the subsequent

new value exception under § 547(c)(4). Stambaugh therefore provided HCL with both types of new

value pursuant to the Code. The lower Court however, ruled: "new value means money or monies

[sic] worth in goods, services or new credit, unquote. *That does not include release of property*

*previously transferred.*" (Tr. 143) (emphasis added). The Court apparently misread the Code as

excluding, as opposed to including, the transfer of previously transferred property in the definition

of new value. In truth, giving the planes back not only conferred new value on HCL, it is <u>defined</u>

as such. The trial court's statement, "[n]ew value, giving the plane back is not new value," (Tr. 144)

is incorrect, a conclusion reached solely from the Court's incomplete reading of § 547(a)(2). As the

Bankruptcy Court itself recognized, "giving the plane back enabled them [HCL] to make more than

a million dollars, maybe $500,000 per month." The Court erred, however, by saying, "but that's not

new value under the statute." (Tr. 144). It is.[4]

---

[4]HCL's Cheryl Grue Bercegeay deposition illustrates why the physical return of property
to a debtor is new value under the Code. Explaining that Stambaugh was cooperative in hurrying
to return one of the jets, she stated:

GUNSTER, YOAKLEY, VALDES-FAULI & STEWART, P.A.
PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW                                                          263343.7

The Court also erred by ignoring the value Stambaugh added in the form of repairs to the

planes, the increased quality of the jets, and the credit Stambaugh extended to HCL as new value

under the statutory definition. "Courts have found new value to include such items as use of

electricity, providing for a guarantee for a new loan to the debtor, shipment of goods and the use of

leased premises." Waldschmidt v. Ranier (In re Fulghum Construction Corp.), 45 B.R. 112, 120

(actual use of rental equipment); Keydata Corp. v. Boston Edison Co. (In re Keydata Corp.), 37 B.R.

324 (Bankr.D.Mass. 1983) (electricity); Thomas W. Garland, Inc. v. Nooney Co., 28 B.R. 87

(Bankr.E.D.Mo. 1983) (leased premises). Unquestionably, the provision of the freshened aircraft,

extended credit, or the release of the liens on the planes are also encompassed within this expression

of new value. And common sense so dictates. For example, here, the Court ruled that the increased

value of the repaired aircraft was not new value. But this cannot be. HCL landed its aircraft at

Stambaugh's place of business in need of heavy "C" checks. As such, they were practically worthless

to HCL because under FAA regulations, they could not fly. As opposed to generating revenue, they

---

| A (Grue Bercegeay): | "I think at the time that Stambaugh was trying to work with us in getting other airplanes into C check, and so no, it doesn't surprise me. They were working with us. |
|---|---|
| Q: | Which is a good thing for you, isn't that correct? |
| A: | Yes. |
| Q: | For HCL? |
| A: | Yes. |
| Q: | It needed every aircraft it could get in the air to generate revenue, is that correct? |
| A: | That's correct. |

(Dep. of Cheryl Grue Bercegeay at 14-15).

would sit generating expenses, depleting the estate. Stambaugh serviced and certified the aircraft, and returned to HCL freshened and legally airworthy aircraft that were not only capable of generating revenue, they in fact did so. As a matter of common sense, Stambaugh's repair of the airplanes added value. Moreover, HCL's ultimate liability to the lessor of each freshened aircraft was reduced, as the leases specifically required the aircraft be returned with fresh "C-checks." (Dep. of Cheryl Grue Bercegeay at 92). When those aircraft were returned they were fresh and thus the estate's liability to the respective leasing companies was hundreds of thousands of dollars less than had the aircraft not been repaired.[5] (Dep. of Cheryl Grue Bercegeay at 93).

      2.      The Bankruptcy Court also ruled that "[r]evenue generated by the returned plane is not new value. As indicated, new value has to be something given directly to the debtor" (Tr. 144). This conclusion is incorrect. First, as discussed in section IV.A., courts specifically focus on whether or not there has been a material benefit conferred upon the debtor's estate, and the

---

[5]Ironically, in the trustee's court-adopted findings of fact and conclusions of law, the court did not deny that the return of the freshened aircraft constituted at least subsequent new value insofar as N295 was concerned. In fact, the Court said this was "possibly subsequent new value under 11 U.S.C. § 547(c)(4)" yet stated that the subsequent new value provided was not proven "with specificity." Findings of Fact and Conclusions of Law, October 13, 1999 at 7. Not only were the payments "definitely," as opposed to "possibly," new value, the conclusion that this value was not proven with specificity is mystifying. Stambaugh most certainly did prove subsequent new value, and not only was that evidence unchallenged at trial, the Court's remarks from the bench clearly indicate the Court knew how much new value had been given. And it was far in excess of the $127,000 claimed by Stambaugh. The Court also cited Nordberg v. Arab Banking Corp., 904 F.2d 588, 595 (11ᵗʰ Cir. 1990) apparently for the proposition that something of tangible value must be provided to constitute new value under the bankruptcy statute. Stambaugh does not quarrel with this. That is why Stambaugh put on evidence of the very tangible goods and services it provided, and of the very tangible cash HCL generated as a result.

USDC Appellate Case No.: 00-6116-CIV-MIDDLEBROOKS
Magistrate Judge Bandstra

generation of revenue by an item provided by a creditor is perhaps the best measure of material

benefit. Here, however, we have proof of new value: the jets were used, and they made money for

every creditor by enlarging HCL's estate.[6] The Bankruptcy Court's holding must be reversed.

Additionally, the Court below erred in stating that new value need be given directly to the

debtor. The subsequent new value exception *explicitly* removes from the trustee's purse transfers

made by the debtor in the pre-petition period, "to or for the benefit of a creditor, to the extent that,

after such transfer, such creditor gave new value to *or for the benefit of the debtor....*" 11 U.S.C.

§ 547(c)(4) (emphasis added). The Court's ruling is inconsistent with the law's plain language.

---

[6]    In correspondence, Mark Stambaugh wrote HCL concerning the urgency of delivering
N295. Grue Bercegeay was asked about this.

Q:        ...[w]hat would the urgency have been?
A (Grue Bercegeay):  Probably because we needed to fly the airplane.
Q:        So once the aircraft is released, you had enough business to get it up in the air and
          generate income?
A:        That's correct.
Q:        And if you had seven aircraft and two in heavy checks at any one time in late October
          of '96 and others ready to go in heavy checks, it was probably essential that you get
          out those that were in as quickly as possible in order to keep operating and continuing
          to be viable, is that correct?
A:        That's correct.
Q:        So there was value to the company in those aircraft being released to you?

Mr. Sanger:    Objection to the form of the question.
Q:        (By Mr. Hudson) You can answer it.
A:        Yes.

(Dep. of Cheryl Grue Bercegeay at 58-59).

The Bankruptcy Court seemingly confused the concept of value with value <u>measurement</u>. Stambaugh provided the credit, lien relief, and planes themselves <u>directly</u> to HCL. Thus, the new value was given directly to the debtor. The <u>measure</u> of this new value is then determined by the benefit it in actuality conferred upon HCL. And this is measured in part by the revenue the aircraft generated.

          3.    The Court incorrectly ruled the release of a lien is not new value. As developed in the record below, HCL sought Stambaugh's services in conditioning HCL's aircraft beginning with the plane referred to as N203. Despite the fact that HCL had not paid the full amount of the repairs, Stambaugh, in possession of N203, agreed to release its mechanics' lien on N203 once another HCL plane, N295 came in for servicing. Pursuant to Georgia law, all mechanics have a special lien in an amount equal to the value of services rendered. Ga.St. 44-14-363. This statute applies to aircraft. <u>Southern Horizons Aviation v. Farmers & Merchants Bank of Lakeland</u>, 497 S.E.2d 637 (Ga.App. 1998). This mechanics' lien is perfected through retention of the relevant property. <u>Id.</u> Nevertheless, Stambaugh, entitled to retain possession of N203 until the $197,000 was paid, released its perfected mechanics' lien worth on November 22, 1996, simultaneously conferring upon HCL a plane worth $197,000 more than had it stayed in Stambaugh's possession. <u>See Sorenson v. Tire Holdings Ltd. Partnership (In re Vinzant)</u>, 108 B.R. 752 (D.Kansas 1989); <u>Kenan v. Fort Worth Pipe Co. (In re George Rodman, Inc.)</u>, 792 F.2d 125 (10th Cir. 1986) (both holding that the value of a released lien is equal to the balance owing upon release). This was not payment for antecedent debt, as the Court believed, but a contemporaneous exchange of <u>new value</u>

under § 547(c)(1). "[I]t is elementary", one court has remarked, that a creditor is "entitled to the

§ 547(c)(1) defense because it released a lien equivalent to the full amount of the transfer by the

debtor. Thus, the estate was not diminished by the transfer because the creditor was secured by a

valid lien to the full extent of the transfer by the debtor, and the goals of the § 547(c)(1) defense were

met." Lowrey v. U.P.G., Inc. (In re Robinson Brothers Drilling, Inc.), 877 F.2d 32, 33-34 (10th Cir.

1989); see also, O'Rourke v. Seaboard Surety Co. (In re Fegert, Inc.), 887 F.2d 955, 958, 959 (9th

Cir. 1989) (noting no contrary authority, and explicitly joining two other federal circuits in holding

that "payments by a debtor in exchange for a secured creditor's release of its security interest fall

within the exception of section 547(c)(1)"). And in a lengthy and well reasoned explanation, the

United States Court of Appeals for the Fifth Circuit, in Gulf Oil, overturned a federal district court

that had ruled that release of a valid security interest did not constitute new value. The appellate

court stated that the contemporaneous new value defense:

> 'is grounded in the principle that the transfer of new value to the
> debtor will offset the payments, and the debtor's estate will not be
> depleted to the detriment of other creditors.' In re Auto-Train Corp.,
> 49 B.R. 605, 612 (Bankr.D.C.1985). The term 'new value' includes
> the 'release by a transferee of property previously transferred to such
> transferee. . ..' 11 U.S.C. § 547(a)(2). Thus, where a creditor takes
> a perfected security interest in a debtor's collateral and, within the
> ninety-day period preceding bankruptcy, releases that security interest
> upon the debtor's performance of its obligation to the secured
> creditor, § 547(c)(1) protects the transfer to the creditor from the
> trustee's voidance powers. See Drabkin v. A.I. Credit Corp., 800
> F.2d 1153, 1157-58 (D.C. Cir. 1986); Matter of Phoenix Steel Corp.,
> 76 B.R. 373, 376 (Bankr.D.De. 1987). The outcome is consistent
> with the principle underlying § 547(c)(1) because the release of the
> debtor's collateral offsets the transfer to the creditor, thereby resulting
> in no depletion of the debtor's estate.

837 F.2d at 228. This is precisely the situation here. Stambaugh's release of its mechanics' lien (or the aircraft itself) did not reduce the value of HCL's estate but, in fact, increased it. The supposed preferential payments claimed by the Trustee total $190,000, slightly *less* than the $197,000 value of the lien release, and certainly far less than the value of the aircraft. HCL did not pay Stambaugh for past work done; it paid Stambaugh to release the plane, a right Stambaugh was not required to relinquish. Stambaugh's release of N203 is by underline new value. The Court erred in finding to the contrary. Indeed, had Stambaugh not released N203, it would still have a perfected security interest in that aircraft today unless and until someone satisfied the balance owing for its repair. Stambaugh however, released the aircraft contingent on possession of N295 to allow the debtor to fly N203 and general substantial revenue. How could anyone dispute that HCL benefitted by the release of a perfected lien on N203 and that the generation of over of $500,000 per month in revenue by that aircraft clearly constitutes new value to HCL? The Bankruptcy Court erred by finding otherwise.[7]

---

[7]The Court below also erred in finding the exchange was not contemporaneous. HCL released N203 on November 22, 1996, but did not send HCL a final invoice until it was ready December 10, 1996. At substantially the same time, HCL made two payments, one on December 20, 1996 for $25,000, and another on January 3, 1997 for $150,000. These two payments have been challenged, but are clearly "substantially contemporaneous." As Cheryl Grue Bercegeay again testified in her deposition, because of accounting to be performed, final invoices are not prepared until after the aircraft are delivered. "[T]ypically this took several weeks," and that "[r]eal life accepts that [a payment is ] due when you get the final invoice." (Dep. of Cheryl Grue Bercegeay at 102-103). These payments, within three weeks of the invoice delivery, amounted to $175,000, still far less than the $127,000 claimed on appeal, and the Court erred by failing to award this amount as contemporaneous new value.

Therefore, Stambaugh provided new value to HCL pursuant to both §§ 547(c)(1) and (c)(4), and the court erred in finding otherwise. Because the new value provided was proven to be far in excess of the challenged preferential transfers, this Court must return the entire amount to Stambaugh. Stambaugh's actions were not only completely within the letter and spirit of the law, they were encouraged by it. Stambaugh's provision of new value to HCL not only kept HCL in the air, it increased HCL's estate for the benefit of everyone.

C.     The Court Improperly Ruled there was No Possessory Lien (Tr. 143)

In the proceedings below, Stambaugh argued that it held a voluntary possessory lien on N295 that fully secured repayment of the amounts owing on N203, though previously released. Under § 547(b)(5) of the Code, Stambaugh would be entitled to retain the payments as not preferential through the perfection of this lien. The lower Court, however, ruled that Stambaugh did not take a security interest in N295. Specifically, the court stated:

> [P]ossessory lien, there was no security interest in this aircraft [N295]. The plane returned, N203 was. Substitute collateral doesn't work. It's not provided for in the statute, and there were no – there was no paperwork giving any lien on the returned plane, unfortunately. (Tr. 143-44).

The Bankruptcy Court also stated, in its findings of fact and conclusions of law, that "[a]t best, whatever mechanics' lien existed for the work done on N203 was released upon the release of the aircraft." FOFCOL at 5. The ruling was in error for two reasons. First, substitute collateral *is* contemplated by the statute. In In re STN Enterprises, Inc., 45 B.R. 959 (D.Vt. 1985), that court explicitly found that the substitution of collateral pursuant to a consensual agreement, where there

was no diminution of value to the debtor's estate, provided the creditor with a valid security interest in the substituted collateral that was unassailable by the Trustee. Id. at 963. See, also, Danning v. World Airways, Inc. (In re Holiday Airlines Corp.), 647 F.2d 977 (9th Cir. 1981) (holding that a mechanics' release of an aircraft, in exchange for another security interest, effected a valid substitution of collateral, resulting in no preference). Viewed in this light, Stambaugh simply substituted its possession of N203 with a consensual lien on N295, secured through its possession of N295. HCL's "preferential" payments were thus not preferential under § 547(b) as the necessary § 547(b)(5) element did not exist.

Second, Stambaugh did perfect its security interest in N295 by its possession. The lower Court believed, as apparent from its remarks above, that a writing was necessary to perfect a mechanics' lien. However, that is not so in Georgia, whose law governs lien perfection in this case. As discussed in IV.B.3., pursuant to Georgia law, all mechanics have a special lien in an amount equal to the value of services rendered, see Ga.St. 44-14-363, and this statute applies to aircraft. See Southern Horizons Aviation, 497 S.E.2d 639. This mechanics' lien is perfected through retention of the relevant property. Id. The Court's statements that the lien was neither recorded nor was there a written agreement granting a lien on N295 are irrelevant. Delivery of the relevant asset implies the existence of the lien under the common law now codified in the various mechanics' lien statutes throughout the country. While there may be other methods of perfecting a security interest, they are not required under Georgia law. Stambaugh held a valid mechanics' lien to cover the debt due and owing from HCL on N295, and it had possession of N295. Stambaugh testified this was his intent;

Grue Bercegeay denied it, but admitted she wasn't surprised they would not have released without payment. The Court did not deny the debt nor the possession, only the method of perfection. But as stated above, Stambaugh's method was valid, and the Trustee fails to prove a preferential payment under § 547(b)(5).

## V. CONCLUSION

The lower Court's equation of fairness with enriching the bankruptcy Trustee is at odds with the plain language of the Bankruptcy Code and the policies behind it. The Court's misreading of § 547 coupled with its departure from well-established case law regarding the definition of new value led it to improperly deny Stambaugh the money it advanced as subsequent and contemporaneous new value to HCL. To say that Stambaugh simply kept HCL at a balance sheet equilibrium would be sufficient to entitle Stambaugh to the return of the $127,000 in challenged payments. But even this characterization does not do justice to Stambaugh. It heftily enriched HCL's estate for all creditors, and followed both the letter and spirit of the law by dealing with an ailing company, keeping it on its feet for as long as possible. For all the reasons stated herein, the Bankruptcy Court's decision must be reversed, and oral argument on these issues as presented to this Court is requested.

USDC Appellate Case No.: 00-6116-CIV-MIDDLEBROOKS
Magistrate Judge Bandstra

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished this _1st_ day of March, 2000, via Facsimile and U.S. Mail, to: Reggie David Sanger, Esq., 208 S.E. 9 Street, Fort Lauderdale, Florida 33316.

GUNSTER, YOAKLEY, VALDES-FAULI & STEWART, P.A.
Attorneys for Stambaugh Aviation, Inc.
One Biscayne Tower, Suite 3400
Two South Biscayne Boulevard
Miami, Florida 33131-1897
PH: (305) 376-6000
FX: (305) 376-6010

By: _Virginia Okemo Pagliery, Esq. # 773451 for_
PHILLIP M. HUDSON, III
Florida Bar No.: 518743

PMH/az

# *ADDENDUM*

## § 547.  Preferences

(a) In this section—

(1) "inventory" means personal property leased or furnished, held for sale or lease, or to be furnished under a contract for service, raw materials, work in process, or materials used or consumed in a business, including farm products such as crops or livestock, held for sale or lease;

(2) "new value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation;

(3) "receivable" means right to payment, whether or not such right has been earned by performance; and

(4) a debt for a tax is incurred on the day when such tax is last payable without penalty, including any extension.

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

226

(C) made according to ordinary business terms;

(3) that creates a security interest in property acquired by the debtor—

(A) to the extent such security interest secures new value that was—

(i) given at or after the signing of a security agreement that contains a description of such property as collateral;

(ii) given by or on behalf of the secured party under such agreement;

(iii) given to enable the debtor to acquire such property; and

(iv) in fact used by the debtor to acquire such property; and

(B) that is perfected on or before 20 days after the debtor receives possession of such property;

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;

(5) that creates a perfected security interest in inventory or a receivable or the proceeds of either, except to the extent that the aggregate of all such transfers to the transferee caused a reduction, as of the date of the filing of the petition and to the prejudice of other creditors holding unsecured claims, of any amount by which the debt secured by such security interest exceeded the value of all security interests for such debt on the later of—

(A)(i) with respect to a transfer to which subsection (b)(4)(A) of this section applies, 90 days before the date of the filing of the petition; or

(ii) with respect to a transfer to which subsection (b)(4)(B) of this section applies, one year before the date of the filing of the petition; or

(B) the date on which new value was first given under the security agreement creating such security interest;

(6) that is the fixing of a statutory lien that is not avoidable under section 545 of this title;

(7) to the extent such transfer was a bona fide payment of a debt to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that such debt—

(A) is assigned to another entity, voluntarily, by operation of law, or otherwise; or

(B) includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support; or

(8) if, in a case filed by an individual debtor whose debts are primarily consumer debts, the aggregate value of all property that constitutes or is affected by such transfer is less than $600.

227

(d) The trustee may avoid a transfer of an interest in property of the debtor transferred to or for the benefit of a surety to secure reimbursement of such a surety that furnished a bond or other obligation to dissolve a judicial lien that would have been avoidable by the trustee under subsection (b) of this section. The liability of such surety under such bond or obligation shall be discharged to the extent of the value of such property recovered by the trustee or the amount paid to the trustee.

(e)(1) For the purposes of this section—

(A) a transfer of real property other than fixtures, but including the interest of a seller or purchaser under a contract for the sale of real property, is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee; and

(B) a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

(2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made—

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time, except as provided in subsection (c)(3)(B);

(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or

(C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of—

(i) the commencement of the case; or

(ii) 10 days after such transfer takes effect between the transferor and the transferee.

(3) For the purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred.

(f) For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

(g) For the purposes of this section, the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section, and the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section.

Pub.L. 95–598, Nov. 6, 1978, 92 Stat. 2597; Pub.L. 98–353, Title III, §§ 310, 462, July 10, 1984, 98 Stat. 355, 377; Pub.L. 99–554, Title II, § 283(m), Oct. 27, 1986, 100 Stat. 3117; Pub.L. 103–394, Title II, § 203, Title III, § 304(f), October 22, 1994, 108 Stat. 4121, 4133.

### Historical and Revision Notes

**Notes of Committee on the Judiciary, Senate Report No. 95–989.** This section is a substantial modification of present law. It modernizes the preference provisions and

228

brings them mor
mercial practice a
Code.

Subsection (a)
Inventory, new v
fined in their ord
to avoid any co
rounding the term

Subsection (b)
this section. It a
a transfer if five c
the five elements
the transfer must
creditor. Second,
on account of an
debtor before the
the transfer mus
debtor was insol
must have been
mediately precedi
case. If the tra
trustee may avoi
during the perio
the filing of the
before the filing.
transfer was ma
believe the debt
the transfer was

Finally, the tr
tor to whom or f
to receive a gre
than he would r
provisions of the
ly, the creditor
would if the case
transfer had not
received paymer
provided by the
title].

The phrasing
the application
from that employ
this language, t
relative distribut
the amount that
bers of the clas
member. The la
to focus on the
which the prefer
would have been
ple, then the tes
because the cred
ing under the
bankruptcy code

The trustee n
under this secti

**From:** Westlaw@westgroup.com
**To:** <cwasserman@gunster.com>
**Date:** 3/1/00 11:40AM
**Subject:** Westlaw Email

© 2000 West Group. Copyright is not claimed as to any part of the original work prepared by a U.S. government officer or employee as part of that person's official duties. All rights reserved. Use of the Westlaw data delivered to your e-mail address is governed by the Westlaw Subscriber Agreement or such other agreement as may govern your use of Westlaw data .

Copr. (C) West 2000 No Claim to Orig. U.S. Govt. Works

GA ST 44-14-363
Code, 44-14-363

TEXT
CODE OF GEORGIA
TITLE 44. PROPERTY
CHAPTER 14.  MORTGAGES, CONVEYANCES TO SECURE DEBT, AND LIENS
ARTICLE 8. LIENS
PART 3. MECHANICS AND MATERIALMEN
Copyright (C) 1982-1999 by The State of Georgia. All rights reserved.
Current through 1999 General Assembly

44-14-363  Special liens on personalty; notice; enforcement; priorities;
 maximum claims for storage; recordation.

  (a) All mechanics of every sort shall have a special lien on personal
property for work done and material furnished in manufacturing or repairing the
personal property and for storage of the personal property after its
manufacture or repair, which storage begins accruing after 30 days' written
notice to the owner of the fact that storage is accruing and of the daily
dollar amount thereof; and said notice shall be mailed to the owner by
certified mail addressed to the owner at his last known address. Such special
liens may be asserted by the retention of the personal property or the mechanic
may surrender the personal property and give credit when the lien is enforced
in accordance with Code Section 44-14-550; and if such special liens are
asserted by retention of the personal property, the mechanic shall not be
required to surrender the property to the holder of a subordinate security
interest or lien. Such liens shall be superior to all liens except liens for
taxes and, except as provided in subsection (2) of Code Section 11-9-310,
such other liens as the mechanic may have had actual notice of before the work
was done or material furnished.
  (b) The maximum amount of storage that may be charged shall be $1.00 per day.
Nothing contained in this Code section shall allow a fee for storage to be
charged on any item with a fair market value in excess of $200.00. Storage
charges pursuant to this Code section shall not apply to motor vehicles now or
hereafter covered by Chapter 3 of Title 40 nor shall the storage fee be charged
if there is a bona fide dispute between the customer and the mechanic as to the
manner of repair or the charges for repair.
  (c) (1) When possession of the property is surrendered to the debtor, the

mechanic shall record his claim of lien within 90 days after the work is done and the material is furnished or, in the case of repairs made on or to aircraft or farm machinery, within 180 days after the work is done and the material is furnished. The claim of lien shall be recorded in the office of the clerk of the superior court of the county where the owner of the property resides. The claim shall be in substance as follows:

"A.B., mechanic, claims a lien on _____ (here describe the property) of C.B., for work done, material furnished, and storage accruing (as the case may be) in manufacturing, repairing, and storing (as the case may be) the same."

(2) If possession of the personal property subject to a special lien as provided in this Code section is surrendered to the debtor and if such special lien is not preserved by recording the claim of lien as provided in paragraph (1) of this subsection, the mechanic acquires a special lien on other personal property belonging to the debtor which comes into the possession of the mechanic, except that this sentence shall not apply to consumer goods which are being used by a consumer for personal, family, or household purposes or which have been bought by a consumer for use for personal, family, or household purposes. The special lien created by this paragraph shall be subject to the provisions of this Code section as to foreclosure and recording.

CREDIT

(Ga. L. 1873, p. 42, s 8; Code 1873, s 1981; Code 1882, s 1981; Ga. L. 1884-85,