# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Southern Division - Miami

**CASE NO.:** 00-6116-CIV-MIDDLEBROOKS
Magistrate Judge Bandstra

In re:

HCL AVIATION, INC.,
d/b/a AV Atlantic,

      Debtor.

USBC CASE NO.: 97-21399-BKC-PGH
Chapter 7 Proceeding

_____

MARIKA TOLZ, Trustee of the
Estate of HCL Aviation, Inc.,

      Plaintiff / Appellee,

v.

STAMBAUGH AVIATION, INC.,

      Defendant / Appellant.

USBC ADV. NO.: 99-2081-BKC-PGH-A

_____/

### DEFENDANT/APPELLANT, STAMBAUGH AVIATION, INC.'S, REPLY BRIEF

Respectfully submitted,
PHILLIP M. HUDSON, III
Florida Bar No.: 518743
GUNSTER, YOAKLEY & STEWART, P.A.
Attorneys for Stambaugh Aviation, Inc.
One Biscayne Tower, Suite 3400
Two South Biscayne Boulevard
Miami, Florida 33131-1897
PH: (305) 376-6000
FX: (305) 376-6010

USDC Appellate Case No.: 00-6116-CIV-MIDDLEBROOKS
Magistrate Judge Bandstra

# TABLE OF CONTENTS

TABLE OF CONTENTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

    Case Law  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

    Statutes  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DISCUSSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    The Trustee's Definition of New Value is Wrong as a Matter of Law  . . . . . . . . . 2

        1.    Release of the Aircraft Itself Constituted New Value Under the Code  . . . 3

        2.    Stambaugh Provided Several Other Forms of New Value; The Revenue Generated by the Aircraft Measures the Benefit Stambaugh Conferred  . . 4

    B.    Stambaugh's Provision of New Value Occurred At or After HCL's Payments, and Thus Within the Protection of the Code  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        1.    HCL's Payments Were Made At or Near the Time the Debt Accrued  . . . 5

        2.    The Payments Made by HCL to Stambaugh Were Not for Antecedent Debt . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    C.    Stambaugh Maintained A Valid Possessory Lien over HCL's Aircraft  . . . . . . . . 8

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CERTIFICATE OF SERVICE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

GUNSTER, YOAKLEY & STEWART, P.A.
PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW
270378.3

i

USDC Appellate Case No.: 00-6116-CIV-MIDDLEBROOKS
Magistrate Judge Bandstra

## TABLE OF AUTHORITIES

**Case Law**                                                                **Page**

Electronic Metal Products, Inc. v. Bittman (In re Electronic Metal Products, Inc.),
916 F.2d 1502, 1506 (10th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7, 8

Gulf Oil Corp. v. Fuel Oil Supply & Terminaling, Inc.,
(In re Fuel Oil Supply & Terminaling, Inc.),
837 F.2d 224 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

In re Excel Enterprises, Inc.,
83 B.R. 427, 431 (Bkrtcy. W.D.La. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Lowrey v. U.P.G., Inc. (In re Robinson Brothers Drilling, Inc.),
877 F.2d 32, 33-34 (10th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Meco of Atlanta, Inc. v. Super Value Stores, Inc.,
215 Ga.App.146, 148, 449 S.E.2d 687, 689 (Ga.App.Ct. 1994)
(citing James G. Wilson Mfg. Co. v. Chamberlain Co.,
140 Ga. 593, 79 S.E. 465) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Statutes**

11 U.S.C. § 547(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

11 U.S.C. § 547(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 6

11 U.S.C. § 547(c)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

**GUNSTER, YOAKLEY & STEWART, P.A.**
PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

270378.3

## I. INTRODUCTION

In its Appellate Brief, Stambaugh argued that the Bankruptcy Court below improperly exalted the Bankruptcy Code's policy of equitable distribution of a bankrupt debtor's assets above the Code's *other*, equally important policy, that of encouraging creditors to extend a helping hand to struggling companies so that they may avoid bankruptcy in the first instance -- a policy Stambaugh exemplified in its dealings with HCL.

The Appellee's Brief now informs the Court of a third policy, albeit subtly. That new policy is the pursuit of "unsecured administrative expenses" – i.e., the paramount right of the Trustee to profit from filing preference actions such as the one at issue, even where it has been admitted that the very creditors the Code means to protect will not see one penny. (Answer Br. at 17; Tr. 16-17). To that end, the Trustee spends its entire brief toying with varying forms of one incredible argument: Stambaugh gave HCL nothing of value. In this way, the money that was rightfully earned by, and due to Stambaugh's productive business efforts will become "unsecured administrative income" to the Trustee's benefit. The advocacy of this new policy demands reply.

As set forth in Stambaugh's Appellate Brief and pursuant to the bankruptcy law, Stambaugh's extensions of credit, ongoing repair and enhancement to HCL aircraft, and release of liens, all unequivocally served to keep a failing HCL in business. (Appellate Br. at 9). HCL earned hundreds of thousands of dollars on one plane alone as a result. The Bankruptcy Code definitively permits a debtor's payments for such value during the preferential period to be retained by the creditor as a method of encouraging creditors to provide value to the faltering business.   But

according to this bankruptcy Trustee, Stambaugh's good deed must not go unpunished. The Appellee's Brief, in an effort to deny Stambaugh its due, misinterprets the law, turns a blind eye toward the facts, and completely abandons the public policy enacted in the Code. The Trustee, in its Appellee's Brief, (1) seeks to apply a very limited definition of new value, a definition rejected both in the Code and in its interpretive case law; (2) erroneously claims that the payments by HCL were neither contemporaneous with nor subsequent to, the provision of such new value; and (3) asserts that Stambaugh could have perfected its interests in HCL's aircraft through only a particular method of lien perfection, disregarding Stambaugh's rights in the possessory lien context.

## II.  DISCUSSION

A.      The Trustee's Definition of New Value is Wrong as a Matter of Law

The Code is generally suspicious of payments made by a debtor during the 90 days prior to its filing for bankruptcy, and therefore requires them to be returned to the debtor's estate. This prevents a debtor from favoring one creditor with payments over another shortly before declaring bankruptcy, and likewise prevents a creditor from dismembering a debtor to take what he can before others do so. See Appellate Br. at 6 (citing, inter alia, Gulf Oil v. Fuel Oil Supply & Terminaling, Inc. (In re Fuel Oil Supply & Terminaling, Inc.), 837 F.2d 224 (5th Cir. 1988). Nevertheless, the Code, recognizing that some of those "preferential payments" "ultimately benefit[] the debtor's estate and hence the other creditors" see, Appellate Br. at 7 (citing Electronic Metal Products, Inc. v. Bittman (In re Electronic Metal Products, Inc.) 916 F.2d 1502, 1506 (10th Cir. 1990)), provides certain "safe harbors" permitting creditors to retain otherwise preferential payments. Among the safe

harbors is the provision of "new value," both contemporaneous or subsequent. <u>See</u> §§ 547(c)(1),

(c)(4). Despite the Trustee's protestations to the contrary, it is plain that Stambaugh provided

exactly the type of value contemplated by the statutes.

      1.     <u>Release of the Aircraft Itself Constituted New Value Under the Code</u>

Though denied by the Trustee as an "expanded definition of new value," <u>see</u>, Answer Br. at

16-17, Stambaugh's release of HCL's aircraft constituted "new value" under the Code. As explained

in Stambaugh's Appellate Brief, this is the *paradigmatic* provision of value to an estate, for as the

black-and-white language of the statute declares, new value includes the "release by a transferee of

property previously transferred to such transferee . . . ." § 547 (a)(2). Stambaugh released HCL's

various aircrafts at or subsequent to the time it received the payments challenged by the Trustee.[1]

As explained in Stambaugh's Appellate Brief, the Bankruptcy Court apparently misread the Code

in this regard. Remembering that the purpose of exempting some transaction from the preferential

payment rule is "grounded in the principle that the transfer of new value to the debtor will offset the

payments, and the debtor's estate will not be depleted to the detriment of other creditors (Appellate

Br. at 9 (<u>citing</u> <u>Gulf Oil</u>, 837 F.2d at 2300), it is eminently understandable that the transfer of

property, particularly revenue generating property, to HCL added substantial value to the estate.

N203, for example generated over $1 million immediately subsequent to Stambaugh's release of the

aircraft, as recognized by the Bankruptcy Court. The release of the aircraft enabled that to happen.

_____

[1]On November 22, 1996, Stambaugh released N203, and on February 13, 1997, it
released N295. During this time period, Stambaugh received $175,000 from HCL. These
payments were challenged as preferential.

2.   Stambaugh Provided Several Other Forms of New Value; The Revenue Generated by the Aircraft Measures the Benefit Stambaugh Conferred

The Trustee focuses almost all further efforts by arguing that the revenue generated by the aircraft after Stambaugh's repair and release is not new value under the Code. The Trustee does so because the money HCL earned upon the repaired aircraft, particularly N203, swamps the preferential payments. But the Trustee again fails to comprehend the meaning of new value. As set forth in Stambaugh's Appellate Brief, Stambaugh's release of valid liens, repair and freshening of aircraft to an operable condition, and extensions of credit all contributed new value to HCL. One way of measuring this value is through resort to revenue generated by the aircraft. The Trustee claims, however, that an adoption of Stambaugh's argument "would eliminate the right to recover a preference in all cases, as anyone contributing goods or serviced [sic] for which preferences are sought could argue that the goods or services contributed to the failing company's ability to make money and point to the gross income generated whether the business operation was profitable or not." Appellee's Br. at 13. This is simply false. As Stambaugh set forth in its Appellate Brief (at page 9), to be considered new value, a benefit must be conferred on the estate. The revenue generated by the aircraft (as well as the enhanced condition of the planes, etc.) is simply a measure of this benefit. Unlike the difficulties of valuation of the new value provided present in other cases, this case is a fairly easy study. We know how much revenue the aircraft generated (see, e.g., Tr. 144), and we know much credit was extended. One need simply consider this: had Stambaugh held N203 through the date of the last alleged preferential payment, i.e., payment in full of the balance owing, the debtor's estate would have been diminished by the revenue not otherwise earned by N203

between November 1996 and February 1997, approximately $1 million. Nor does this take into account that N203, grounded without repair, would not only <u>not</u> be earning, it would be rapidly depreciating in the shop. It is incredulous to claim that Stambaugh's work did not enhance the estate to the benefit of all. Thus, the Trustee's claims ignore the realities and are little more than a desperate attempt to retain moneys for itself that rightfully should be paid to Stambaugh.

B.    <u>Stambaugh's Provision of New Value Occurred At or After HCL's Payments, and Thus Within the Protection of the Code</u>

1.    <u>HCL's Payments Were Made At or Near the Time the Debt Accrued</u>

The Trustee devotes much space to arguing that even if Stambaugh did enrich the estate, because HCL paid Stambaugh after receiving these benefits, the payments were not contemporaneous or subsequent, as required, but rather were payments for antecedent debt, falling outside the safe harbors of §§ 547(c)(1) and (c)(4). This conclusion defies both the common sense view of the facts and the purpose of the safe harbor exceptions.

Stambaugh received the three questioned payments in this litigation at the following times: a $25,000 payment on December 20, 1996, a $150,000 payment on January 2, 1997, after which Stambaugh continued to work on N295, and a $15,000 payment on February 24, 1997, the same day Stambaugh inducted N1910. A final invoice could not be prepared and sent to HCL until December 10, 1996, and within three weeks (containing two intervening federal holidays) HCL paid Stambaugh $175,000. This is the substantial contemporaneity required by the Code.[2] Paying for

_____

[2]Though the Trustee cites <u>In re Excel Enterprises, Inc.</u>, 83 B.R. 427, 431 (Bkrtcy. W.D.La. 1988) for the proposition that a debt accrues on the day the work is done as opposed the

services at the time they are rendered is an even exchange on a balance sheet, and does not deplete the debtor's estate -- a central concern of the preferential payment prohibition. Here, Stambaugh provided $197,000 worth of repairs and received $175,000 at or near the same time. Stambaugh, far from damaging HCL's balance sheet, actually improved it, and the questioned payments are clearly protected by § 547(c)(1). See section A above; Appellate Br. at 7. The lower court erred in finding otherwise.

2.     The Payments Made by HCL to Stambaugh Were Not for Antecedent Debt

The Trustee's mantra that any payments received by Stambaugh were for unrecoverable antecedent debt fits neither the facts nor the policy underlying the case or the Code. As explained in full in Stambaugh's Appellate Brief, antecedent debt is normally not recoverable during the preference period because it weighs against the equality of distribution of a debtor's estate: if all creditors are owed money, allowing one to receive funds to the exclusion of others implicates the Code's desire for fairness. Appellate Br. at 6-7. But this general philosophy is simply inapplicable to what occurred here. Stambaugh, in possession of N203, *and having the right to maintain possession of that aircraft until fully paid*, accelerated its work and released the plane at HCL's

---

date of the billing, (Answer Br. at 9) this is inapposite here. In Excel Enterprises, the court held that under a different safe harbor exception, the date services were rendered should act as the operative date, as opposed to the date of the invoice, because it would "risk that billing vagaries would result in dissimilar treatment of similarly situated creditors." Id. at n.6. This has no application in the case at bar: given the nature of the work performed, it was impossible to know until later the exact value of "what work had been done" until final reconciliations for the servicing had been performed and the bill was issued. To reiterate HCL's own President, "[r]eal life accepts that [a payment] is due when you get the final invoice." Dep. of Cheryl Grue Bercegeay at 102-03). See also Appellate Br. at 17 n.7.

behest so that HCL could generate revenue, which it did. HCL's own President testified to that fact. See Grue Bercegeay Dep. at 15 (agreeing that HCL "needed every aircraft it could get in the air to generate revenue.") According to the Trustee's logic, it would have been better for Stambaugh to have retained N203 and let HCL die on the vine. Instead, in keeping with the Code's other goal of nursing along a troubled debtor to save it from bankruptcy, Stambaugh released N203 before it was paid in full. To later pay Stambaugh for its work on N203 - a plane on which HCL was now generating revenue to the benefit of all creditors - did not favor Stambaugh, for it could have simply held the plane, nor did it shrink the debtor's estate. It would indeed be a perverse result if Stambaugh is penalized for acting pursuant to the law's encouragement. And not only in this case. Such a ruling would signal to small, independent aircraft mechanic businesses like Stambaugh, that at a carrier's first sign of trouble, pounce on that debtor and hold its property. This is not the result the Code intended.[3]

Moreover, subsequent new value was clearly provided by Stambaugh's continued work on HCL's craft after the preferential payments were made -- providing repairs to N295, N293 and N1910. Though the Trustee challenges the notion that continued work provides new value, this is clearly so. The Trustee cites In re Electronic Metal Products, Inc., 916 F.2d 1502, 1506 (10th Cir. 1990) for the proposition that the "fact that [the creditor] may have promised to continue to do business with [the debtor] if it paid its bills is not new credit or new value to the estate" (citing in

---

[3] Indeed, here it is more troubling, as it is the Trustee, the only party capable of profiting, who now pounces upon Stambaugh.

GUNSTER, YOAKLEY & STEWART, P.A.
PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

270378.3

turn, <u>Lowrey v. U.P.G., Inc.</u> (<u>In re Robinson Bros. Drilling, Inc.</u>), 877 F.2d 32, 34 (10th Cir. 1989). But the Trustee misinterprets these cases. Stambaugh *agrees* that a mere promise to continue doing business would be insufficient to be considered new value. But Stambaugh actually *did* continue to business, providing ongoing repairs to HCL's leased aircraft, issuing extensions of credit to permit HCL to land its planes and begin work, and releasing Stambaugh's possessory liens on HCL's aircraft all constituted new value provided at or subsequent the time HCL paid Stambaugh the preferential funds. In <u>Electronic Metal Products,</u> of which the Trustee makes much hay, the Court there simply found an attorney who continued to work on a case in consideration for continued payments -- the situation the Trustee finds applicable here -- was not entitled to avoidance of the Trustee's powers because there was "no evidence ... that the $42,000 settlement which enriched the estate was directly attributable to [the attorney's] promise to continue to work . . .." 916 F.2d at 1506. Our situation is completely to the contrary, as the enrichment of HCL's estate is undeniably attributable to Stambaugh's continued services in the many, substantial, and varied forms described above.

Therefore, as a matter of law, Stambaugh provided new value contemporaneously and subsequent to the preferential payments, and acted fully in accordance with established Code policy. Stambaugh should thus be permitted to retain the questioned payments.

C.    <u>Stambaugh Maintained A Valid Possessory Lien over HCL's Aircraft</u>

Stambaugh has argued that one of the many forms of new value it provided to HCL – and therefore in no way is it dispositive of the issue as to whether Stambaugh provided new value – was

in the form of releasing possessory liens on HCL's aircraft. The Trustee vehemently opposes Stambaugh's claim that it had a valid mechanics' lien on N203 and N295. The Trustee argues three points: first, that the Georgia mechanics' lien does not apply to leased property; second, the lien had to be recorded with the Federal Aviation Administration ("FAA"); and third, Stambaugh's participation in the unsecured creditors' Committee suggests it did not believe it had a valid possessory interest in the relevant aircraft. See Appellee's Br. at 18-21 Each of these points is easily refutable.

First, the Georgia Mechanics' Lien statute does apply to leased property. As an initial matter, however, it must be noted that Stambaugh is not seeking to enforce the lien against the real owner of the property, as the Trustee seems to imply. Rather, Stambaugh is merely indicating that its release of its liens had value to HCL.[4] Under Georgia law, "as a general principle, a claim of lien can be filed and enforced against a leasehold interest. A laborer or mechanic is entitled to a lien on whatever interest his employer had in the property at the time the work was done, or the materials were furnished." Meco of Atlanta, Inc. v. Super Value Stores, Inc., 215 Ga.App.146, 148, 449 S.E.2d 687, 689 (Ga.App.Ct. 1994) (citing James G. Wilson Mfg. Co. v. Chamberlain Co., 140 Ga. 593, 79 S.E. 465). Thus, Georgia law recognizes mechanics' liens against leased property, and by

---

[4]The lessors in this instance are also subject to the Georgia statutory liens because the leases contemplate and require repair, and further contemplate potential lien issuance. See, Tolz v. Stambaugh, 99-2081-BKC-PGH-A, Exhibit UUU: December 1, 1991 Aircraft Lease Agreement between IAL Aviation Services, Inc. and HCL Aviation, Inc. - N203AV.

releasing possession, and thus the lien, Stambaugh unencumbered HCL's leasehold interests in the aircraft.

Second, though the Trustee discusses the importance of recording liens with the FAA, that has nothing to do with a possessory mechanics lien. Georgia law is clear that retention of an item is sufficient. Where this places the possessory lien holder in priority is irrelevant. Again, the only issue is whether the release of the liens through release of possession gave value to HCL, and it can scarcely be denied that it did. Once released one need only calculate the value of what was released. See section C, supra.

Finally, the Trustee alleges that because Stambaugh filed an unsecured claim for some $62,798.01, this was "not consistent" with the behavior of a secured creditor. This is a red herring for at least two reasons. First, filing an unsecured claim may serve as a backup position in case a secured claim is determined at some point to be unsecured. Preparing for contingencies is the mark of good lawyering, not dispositive of the claim. Second, the unsecured credit filing was not exclusive of all other forms of new value provided to HCL. That is, while the Trustee did give $62,798.01 in credit as subsequent new value, this is only one of many forms of new value given by Stambaugh, as explained in detail in the Appellate Brief and within this Reply Brief. The release of valid mechanics' liens is simply another form of new value Stambaugh provided.

### III. CONCLUSION

For the reasons stated within and in Stambaugh's Appellate Brief, Stambaugh provided HCL with various forms of contemporaneous and subsequent new value pursuant to bankruptcy law. In

so doing, Stambaugh kept HCL alive for the benefit of all creditors.   Stambaugh may not be sacrificed to those other creditors now.   Worse, still, would be sacrificing Stambaugh for the benefit of the Trustee.   Which, of course, is exactly what the Trustee has in mind.

USDC Appellate Case No.: 00-6116-CIV-MIDDLEBROOKS
Magistrate Judge Bandstra

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished  this

24th day of April, 2000, via Facsimile and U.S. Mail, to: Reggie David Sanger, Esq., 208 S.E.

9 Street, Fort Lauderdale, Florida 33316.

GUNSTER, YOAKLEY & STEWART, P.A.
Attorneys for Stambaugh Aviation, Inc.
One Biscayne Tower, Suite 3400
Two South Biscayne Boulevard
Miami, Florida 33131-1897
PH: (305) 376-6000
FX: (305) 376-6010

By: _____ for

PHILLIP M. HUDSON, III   Bar No 0159697
Florida Bar No.: 518743

PMH/az