UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 00-6116-CIV-JORDAN

In re: )
)
HCL AVIATION, INC. )
)
    Debtor )
_____ )
)
STAMBAUGH AVIATION, INC. )
)
    Appellant )
vs. )
)
MARIKA TOLZ, Trustee )
)
    Appellee )
_____ )

### ORDER REVERSING BANKRUPTCY COURT JUDGMENT

Stambaugh Aviation appeals from a bankruptcy court judgment after a trial holding that Marika Tolz, as trustee, is entitled to avoid preferential payments made by HCL Aviation to Stambaugh pursuant to 11 U.S.C. § 547. The bankruptcy court held, in sum, that the payments to Stambaugh satisfied § 547(b)(5) because it was not a secured creditor, and that the payments were not exempt under § 547(c)(1) as contemporaneous exchanges for new value, under § 547(c)(2) as made in the ordinary course of business, or under § 547(c)(4) as subsequent new value. Stambaugh filed an appeal, arguing that the bankruptcy court committed reversible error.[1] Because the facts demonstrate that Stambaugh had a mechanic's lien under Georgia law, *see* Ga. Code § 44-14-363, the payments by HCL to Stambaugh cannot be avoided as preferential transfers under 11 U.S.C. § 547(b). The bankruptcy court's judgment is, therefore, REVERSED.

---

[1] Stambaugh does not challenge the bankruptcy court's rulings regarding the application of the § 547(c)(2) exception. Accordingly, I will not address that issue.

## I. FACTS[2]

This adversary proceeding was brought by Ms. Tolz, the acting Chapter 7 trustee, on March 8, 1999, for recovery of preferential payments made pursuant to 11 U.S.C. §§ 547 and 550. Ms. Tolz was appointed on October 29, 1997, as the duly qualified and acting Chapter 7 trustee after HCL had initially filed a Chapter 11 proceeding on March 10, 1997, which was subsequently converted on October 23, 1997.

HCL operated a regional airline, holding a 121 Certificate with the Federal Aviation Administration. As an air carrier, it operated a small fleet of leased commercial aircraft until the FAA suspended its air carrier certificate on March 7, 1997. Stambaugh provided maintenance and service to HCL's aircraft prior to its bankruptcy. Although HCL attempted to get the FAA suspension lifted during the Chapter 11 proceeding, it was unsuccessful. This led to the conversion of the case into a Chapter 7 proceeding.

Ms. Tolz initiated this proceeding against Stambaugh, seeking to recover certain preferential transfers. After discovery, she narrowed the number of the challenged transfers to the following:

| Date of transfer | Amount |
| --- | --- |
| (1) 12/30/96 | $25,000 |
| (2) 01/03/97 | $150,000 |
| (3) 02/24/27 | $15,000 |

These transfers were in payment of an antecedent debt due to Stambaugh.

In October of 1996, HCL commenced doing business with Stambaugh. Stambaugh contracted, pursuant to a bid package, to provide maintenance services to HCL on one of its leased aircraft, known as Aircraft N203. The terms of payment for the services provided were as follows.

> 50% Labor costs upon induction;
> 50% Materials costs upon induction;
> Balance upon delivery of aircraft.

Induction meant delivery of the aircraft to Stambaugh.

---

[2] Because Stambaugh does not dispute the facts, *see* Transcript of Oral Argument at 5, these facts are taken directly from the bankruptcy court's findings of fact, following review of the record below, including the parties' exhibits.

2

HCL made the induction payments for the labor and materials, but could not pay the remaining amount due on delivery. Stambaugh refused to release N203 upon completion of the maintenance until HCL awarded it a contract to service N295, another of HCL's aircraft. Stambaugh insisted that N295 be inducted (*i.e.*, delivered) before the release of N203 to ensure that it was in possession of collateral sufficient to secure repayment of the money HCL owed it on N203. On November 14, 2002, N295 was inducted, and Stambaugh released N203 to HCL on November 22, 2002.

It was only after numerous demand letters, threats from Stambaugh, and a work stoppage on N295 that HCL made payments on the N203 balance. Even after partial payments through January 3, 1997, totaling $175,000, there was still a balance of $22,619.55 due to Stambaugh for work done on N203. In fact, HCL did not pay the balance due until the last payment was applied to the account on February 24, 1997, in the amount of $15,000, and Stambaugh applied a credit due to HCL for work done on another aircraft.

Following a trial, the bankruptcy court held that the three payments made to Stambaugh between December of 1996 and February of 1997 were preferential, and therefore, the trustee was entitled to avoid them. The court entered judgment in favor of the trustee in the amount of $127,201.89 ($190,000 minus $62,798.01 in net value credit under 11 U.S.C. § 547(c)(4)). First, the court held that the § 547(b)(5) requirement was satisfied because Stambaugh was not a secured creditor. Second, the court held that the payments were not exempt under the contemporaneous exchange for new value exception of § 547(c)(1), nor the subsequent new value exception of § 547(c)(4). Finally, the court held that the § 547(c)(2) exception did not apply because the payments were not made in the ordinary course of business. Stambaugh does not challenge the § 547(c)(2) ruling, but contests the first two rulings.

## II. ANALYSIS

The bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed under the *de novo* standard. *See, e.g., In re Das A. Borden & Co.*, 131 F.3d 1459, 1462 (11th Cir. 1997). More specifically, whether Stambaugh is a secured party is purely a question of law, which I will review *de novo*. *See Liffon Indus. Automation Sys., Inc. v. Nationwide Power Corp.*, 106 F.3d 366, 368 (11th Cir. 1997) (discussing whether litigant was "holder of a security

interest" under 26 U.S.C. § 6323, the Federal Tax Lien Act). *See also Fidelity Financial Services, Inc. v. Fink*, 522 U.S. 211, 213 n.1 (1998) (explaining, in case involving 11 U.S.C. § 547, that whether a "mailing was sufficient to perfect the [security] interest is an issue of state law"); *In re Wall*, 216 B.R. 1016, 1017-20 (Bankr. M.D. Ga. 1998) (perfection of lien under Georgia law is question of law).

Stambaugh first argues that the bankruptcy court erred when it held that Stambaugh was not a secured creditor. To qualify as a preferential transfer subject to avoidance by a trustee in bankruptcy, a payment must satisfy the five requirements set forth in § 547(b).[3] Stambaugh concedes that all the requirements are satisfied, except for § 547(b)(5). That section provides that a trustee can avoid a transfer only if the transfer enabled the creditor to receive more than it would have received if the transfer had not been made and the creditor had received payment under the provisions of Chapter 7. Stambaugh claims that it had a valid mechanic's lien which would have enabled it to sell the aircraft had HCL not made payment. If this assertion is correct, HCL's transfer did not enable Stambaugh to receive more than it would have received in a Chapter 7 proceeding. The bankruptcy court held that no valid mechanic's lien existed.

---

[3] That section provides as follows:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property –
    (1) to or for the benefit of a creditor;
    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
    (3) made while the debtor was insolvent;
    (4) made –
        (A) on or within 90 days before the date of the filing of the petition; or
        (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
    (5) that enables such creditor to receive more than such creditor would receive if –
        (A) the case were a case under Chapter 7 of this title;
        (B) the transfer had not been made; and
        (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The perfection of a lien, in the first instance, is governed by the law of the state where the property is situated. *See* 5 COLLIER ON BANKRUPTCY ¶ 547.05[2] at 547-79 (15th ed. 2002); *In re Holloway*, 132 B.R. 771, 773 (Bankr. N.D. Okla. 1991); *In re Diamond Mfg. Co., Inc.*, 123 B.R. 125, 127 (S.D. Ga. 1990).[4] Stambaugh argues that it had a mechanic's lien on N203 and then N295 pursuant to Georgia law, particularly Ga. Code § 44-14-363.[5] That statute provides in pertinent part as follows:

> (a) All mechanics of every sort shall have a special lien on personal property for work done and material furnished in manufacturing or repairing the personal property . . . Such liens may be asserted by the retention of the personal property *or* the mechanic may surrender the personal property and give credit when the lien is enforced in accordance with Code Section 44-14-550 . . .
>
> (c)(2) If possession of the personal property subject to a special lien as provided in this Code section is surrendered to the debtor and if such special lien is not preserved by recording the claim of lien as provided in paragraph (1) of this subsection, *the mechanic acquires a special lien on other personal property belonging to the debtor which comes into the possession of the mechanic* . . .

(emphasis added).

The bankruptcy court, in holding that no mechanic's lien existed on HCL's aircraft in Stambaugh's possession, relied first on the facts that there were no writings giving Stambaugh a security interest in HCL's property, and that no UCC financing statement was recorded and filed with any state or with the FAA. The Georgia statute, however, requires no filing or documentation. Instead, it specifically provides for the creation of a lien through retention of the property. The fact that Stambaugh did not have a documented security agreement is irrelevant.

The trustee argues that, notwithstanding the statute, Stambaugh was required to record its lien with the FAA because the property involved was an aircraft. In asserting this argument, the trustee relies on *Southern Horizons Aviation v. Farmers & Merchants Bank of Lakeland*, 497 S.E.2d 637 (Ga. Ct. App. 1998). In *Southern Horizons*, the Georgia appellate court held that, in a priority

---

[4] In contrast, whether a transfer is preferential and avoidable by the trustee is governed by § 547 of the Bankruptcy Code. *See* 5 COLLIER ON BANKRUPTCY ¶ 547.05[2] at 547-80 (15th ed. 2002).

[5] The parties agree that Georgia law applies to this issue.

contest, a mechanic's lien on an aircraft not recorded with the FAA was not valid against other secured creditors. This case is inapposite, however, because Stambaugh is not involved in a priority contest. It merely asserts that it had a valid lien under Georgia law. Failure to record with the FAA does not prevent a party from attaining secured status, but merely renders the secured interest unenforceable against creditors who have recorded with the FAA. The Georgia appellate court's reliance on the Supreme Court decision in *Philko Aviation v. Shacket*, 462 U.S. 406 (1983), illustrates this point. The Supreme Court, in *Philko*, held that "all interests [in aircraft] must be federally recorded *before they can obtain whatever priority to which they are entitled under state law*." *Id.* at 413 (emphasis added). Accordingly, Stambaugh's failure to record with the FAA has no bearing on whether it was a secured party under Georgia law for purposes of determining the applicability of § 547(b)(5). *See also Bergquist v. Anderson-Greenwood Aviation Corp.*, 850 F.2d 1275, 1277-78 (8th Cir. 1988) (holding that 49 U.S.C. App. § 1403, a part of the Federal Aviation Act, did not displace state law concerning perfection of liens on aircraft); *Danning v. World Airways, Inc.*, 647 F.2d 977, 979-80 (9th Cir. 1981) (same).

      The trustee also argues that the Georgia mechanic's lien statute is inapplicable to leased property. The trustee contends that since HCL does not own the aircrafts, but merely leases them, Stambaugh could not hold a valid mechanic's lien for its repair work. In support of this argument, the trustee cites *Manchester Motors, Inc. v. Farmers & Merchants Bank*, 87 S.E.2d 342 (Ga. Ct. App. 1955). That case, however, held only that a mechanic's lien is not valid against the claims of a legal title holder. *See id.* at 345. Once again, this deals merely with the priority of a mechanic's lien, and not its validity. Indeed, "as a general principle, a claim of lien can be filed and enforced against a leasehold interest. '[A] laborer or mechanic is entitled to a lien on whatever interest his employer had in the property at the time the work was done, or the materials were furnished.'" *Meco of Atlanta, Inc. v. Super Value Stores, Inc.*, 449 S.E.2d 687, 689 (Ga. Ct. App. 1994) (citations omitted). Accordingly, the fact that HCL leased the aircraft does not alter the status of Stambaugh's mechanic's lien.

      The bankruptcy court also concluded that the substitution of N295 for N203 destroyed whatever lien Stambaugh had for work done on N203. *See* Findings of Fact and Conclusions of Law at 5 ("At best, whatever mechanic's lien existed for work done on N203 was released upon the

release of the aircraft."). This conclusion represents a misreading of the applicable Georgia law.

The bankruptcy court relied on *In re Express Fruit & Produce, Inc.*, 16 B.R. 366 (Bankr. D. Minn. 1982). In that case, the creditor held a mechanic's lien for repair work done on a trailer. The creditor agreed to release the trailer before the debt was paid, but only because the debtor delivered a second trailer to act as substitute collateral. The bankruptcy court in *Express Fruit* held that, under the Minnesota mechanic's lien statute, the creditor had extinguished his lien by releasing the first trailer. *See id.* at 368.

*Express Fruit* is distinguishable. The Minnesota mechanic's lien statute in that case, Minn. Stat. § 514.18, provided that "a voluntary surrender of possession shall extinguish the lien herein given." *See id.* Thus, the Minnesota statute specifically provided for the release of the lien upon the release of the original property. Georgia's mechanic's lien statute, however, provides the opposite. It states that upon surrender of the original property to the debtor, "the mechanic acquires a special lien on other personal property belonging to the debtor which comes into the possession of the mechanic." Ga. Code § 44-14-363(c)(2). Thus, Georgia law, unlike Minnesota law, permits the substitution of collateral to maintain a mechanic's lien.

Stambaugh refused to release N203 to HCL unless HCL delivered another aircraft, N295, into its possession. Thus, according to the Georgia mechanic's lien statute, Stambaugh retained a security interest for the amount due on the N203 repair account. *See Danning*, 647 F.2d at 981-82 (holding that, under California law, substitution of an aircraft for another upon which repair work was done maintained mechanic's lien); *In re STN Enterprises*, 45 B.R. 959, 964 (Bankr. D. Vt. 1985) (holding that, under Vermont law, substitution of collateral maintained possessory lien on original debt).

The bankruptcy court, in holding that Stambaugh was an unsecured creditor, also apparently relied on the fact that Stambaugh filed an unsecured claim in HCL's bankruptcy proceeding and participated as a member of the Unsecured Creditors' Committee. Nothing in the applicable law, however, indicates that these actions constitute any sort of waiver to the assertion of secured creditor status, or that they are facts which should be taken into account in applying Georgia law. The bankruptcy court cited no authority to support its position on this issue, and the trustee did not offer any such authority in its brief. Stambaugh appears to have merely been protecting its rights through every available alternative. Its actions in this respect are not dispositive as to its secured status.

In sum, the bankruptcy court erred in holding that Stambaugh was an unsecured creditor under Georgia law. Stambaugh held a valid mechanic's lien for the repair work done on N203, which continued when HCL delivered N295 into its possession prior to the release of N203. Accordingly, the transfers by HCL could not have been preferential because the § 547(b)(5) requirement was not satisfied.[6]

### III.   CONCLUSION

The bankruptcy court's decision that Stambaugh was an unsecured creditor under Georgia law and that the payments at issue were preferential transfers subject to avoidance is REVERSED. Stambaugh is entitled to retain the entire amount of the three payments, *i.e.*, $190,000.00.

DONE and ORDERED in chambers in Miami, Florida, this 10th day of December, 2002.

                                                                       */s/ Adalberto Jordan*
                                                                       Adalberto Jordan
                                                                       United States District Judge

Copy to:   All counsel of record

---

[6] Stambaugh also appealed the bankruptcy court's findings that HCL's payments were not exempt preferential transfers under §§ 547(c)(1) and 547(c)(4), because they did not constitute intended contemporaneous exchanges of new value. The issues of intent, contemporaneity, and new value, however, are purely questions of fact. *See In re Lewellyn & Co.*, 929 F.2d 424, 427-28 (9th Cir. 1991); *Creditors' Committee v. Spada*, 903 F.2d 971, 975 (3d Cir. 1990); *In re David Jones Builder, Inc.*, 129 B.R. 682, 695 (Bankr. S.D. Fla. 1991). After reviewing the record, I find that the bankruptcy court's determinations on these issues were not clearly erroneous, and therefore, will not be disturbed. Because I conclude, however, that the payments by HCL were not preferential transfers under § 547(b), § 547(c) is inapplicable.